UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

SALLY BLAIS,
Personal Representative of the Estate of
David Blais,
    Plaintiff
v.

DYLON MILLS
a/k/a Dylon Rappleyea,

and

MARY KENNETH TARR
a/k/a Mary Blais
a/k/a Mary Kate Blais
a/k/a Maria Lopez

and

GORHAM SAND AND GRAVEL
    Defendants

Civil Action No.
_____

## PLAINTIFF'S COMPLAINT AND JURY TRIAL DEMAND

### Preamble:

    Undersigned counsel was retained by the plaintiff on 12/19/2024 in this matter. Prior to counsel's involvement, there were other matters filed on behalf of the plaintiff. On 12/21/2020, a Complaint was filed on behalf of the plaintiff in Maine-York County Superior Court, Docket No. 20-246. This case was dismissed by the Court on 5/10/2021, without prejudice.

    On 12/28/2021, a Complaint was filed in the Commonwealth of Massachusetts-Essex Superior Court, Docket No. 2177cv01253, Blais v. Tarr and Mills. Tarr has been defaulted in that matter, and Mills was dismissed from the claim by the Court. However, there exist claims which were not pleaded in that Complaint against these two defendants, which necessitate the instant litigation.

    Third, a challenge regarding the FOIA response of Maine State Police which currently is pending entitled, Sally Blais v Maine State Police, CA No. AUGSC-CV-21-00122, Kennebec Superior Court.

1

## PARTIES

1. The plaintiff, Sally Blais, is the personal representative of the estate of David Blais. David Blais died on December 29, 2018. Plaintiff is a resident of W. Brookfield, Massachusetts.
2. The defendant, Dylon Mills, is a resident of Old Orchard Beach, County of York, State of Maine(hereinafter "Mills").
3. The defendant, Mary Kenneth Tarr, a/k/a Mary Blais, Mary Kate Blais, and Mary Lopez, is a resident of Old Orchard Beach, ME(hereinafter "Tarr").
4. The defendant, Gorham Sand and Gravel, Inc. is a duly licensed corporation doing business in the State of Maine with a principal place of business located in Gorham, ME(Hereinafter "Gorham").

## JURISDICTION/VENUE

5. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C., § 1332 and tort laws for the State of Maine. [1]
6. This action is brought between parties of different states and the amount in controversy exceeds Seventy-Five-Thousand Dollars ($75,000), exclusive of interest and cost.
7. Venue is appropriate as the transaction/occurrence occurred in the State of Maine.

## FACTS

8. In or around May of 2018, decedent David Blais met defendant Tarr online.
9. At the time that he met Tarr, Blais was 33 years old and Tarr was 49 years old.

---

[1] The State of Maine maintains a 6 year Statute of Limitations on the Filing of Personal Injury claims: "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues… ." (Me. Rev. Stat. tit. 14, § 752 (2023). Six years to file claim when fraud is involved. (Me. Rev. Stat. tit. 14, § 859 (2023). Claims for wrongful death may be commenced within 6 years when homicide is involved. Title 14, section 1605.

10. On or about June 1, 2018, Tarr, who was an unemployed nursing assistant, moved into Blais' residence, and served as his personal medical assistant and caretaker during the summer and fall of 2018.

11. In June of 2018, Blais began experiencing psychiatric distress and displaying emotional and mental health symptoms to his family, friends, and employer of three years.

12. This was the first time in Blais' life that he began showing signs of psychiatric distress and this psychiatric distress coincided with Tarr moving into his home and becoming his caretaker.

13. Defendant Mills was a friend to Tarr, who made Blais' acquaintance at this time.

14. Both Mills and Tarr remained actively involved with Blais' life while he experienced the psychiatric distress and exhibited symptoms during the months that followed his meeting of Tarr.

15. On June 22, 2018, Blais was admitted to in-patient psychiatric care at Partners Salem Hospital, and remained there until July 16, 2018.

16. Following his release from Partners Salem Hospital, Blais underwent out-patient psychiatric care from July 17, 2018-until his death on December 29, 2018.

17. During the time frame from June 1, 2018-December 29, 2018, Tarr managed Blais' care, including managing his bills, finances, rent, and new unemployment claims.

18. Tarr also managed Blais' medical care by monitoring his medications and making his medical and psychiatric appointments.

19. During his in-patient care, Tarr and Mills visited Blais at the hospital.

20. Tarr managed the amounts of his medicine and controlled all of his day-to-day activities and medical appointments and medication intake.

21. Tarr's professional history as a nursing assistant afforded her knowledge of the potential side effects of all of Blais' medications, and she represented to Blais and to others that she had knowledge and experience to undertake the day-to-day care of Blais during the time from June 1, 2018-December 29, 2018.

22. When Blais was released on July 16, 2018 from Partners Salem Hospital, after the medical staff determined he had improved while in-patient, he was released to Tarr's care.

23. Following his release from the hospital, he began a rapid mental and emotional decline and began once again experiencing psychiatric symptoms.

24. On August 6, 2018, Blais and Tarr unexpectedly married, while Blais was unemployed and continuing to undergo intense out-patient psychiatric treatment.

25. Tarr did not inform the select majority of Blais' family, including the plaintiff, Blais' mother, of the ceremony and, in fact, strategically excluded them from it.

26. During the months of June 1, 2018-until his death on December 29, 2018, Blais reported to family that he did not know was what wrong with him and why he was no longer himself.

27. By October of 2018, Blais was completely dependent on Tarr and was unable to drive a vehicle nor find his way off Nahant Island, where he lived.

28. On December 28, 2018, a college friend of David Blais, Steven Lanciotti, attempted emergency contact with Blais' family after speaking with Blais on the phone that night out of urgent concern for Blais' health and well-being, as Blais was incoherent during the phone call.

29. On December 29, 2018, Tarr and Mills organized a day trip with Blais to Maine from Blais' residence in Massachusetts.

30. By that time, Blais was unable to drive and could only have gone anywhere if taken by Tarr and Mills.

31. The three individuals stopped first at a highway liquor store at which Blais, in the care of Tarr and Mills, consumed alcohol after they were aware of the strong psychiatric medicines he had consumed that day at Tarr's direction.

32. After leaving the liquor store, the three went to the apartment of Mills' and Tarr's daughter in Saco, ME.

33. After leaving the apartment, the three went to the premises of Gorham Sand and Gravel in Lyman, ME, where Mills provided a gun to Blais.

34. On information and belief, the gun belonged to Mills and was registered that way. [2]

35. Gorham Sand and Gravel had no security in place to address individuals using their premises for practice shooting, a common practice on their premises.

36. Gorham Sand and Gravel was aware that individuals entered onto their land and used their premises for shooting practice.

37. Gorham failed to post warning or caution signs to entrants onto their land that shooting was taking place.

38. Gorham failed to erect fencing or a gate to keep individuals from using their premises for shooting practice.

39. The gun belonged to Mills, and Mills was aware that Blais had no training or experience with guns.

40. Tarr and Mills, aware of the amounts of psychiatric medicines and alcohol consumed by Blais, did not monitor his use of the gun.

---

[2] Subject to a FOIA Review/Appeal in Maine.

5

41. After being handed the gun without any supervision by Tarr and Mills, Blais fired the gun and received a gun shot wound.

42. After the shooting occurred, Mills took possession of the weapon, emptied the remaining bullets, cleaned the firearm, and locked it up in the back of Mills' truck's glove compartment, all before the police arrived.

43. Neither Mills nor Tarr attempted to perform CPR or other life saving measures to assist Blais after he was injured.

44. Despite Tarr's claim to have professional medical knowledge and training, she did not assist Blais with his injuries.

45. Tarr had the last clear chance to render life saving care to Blais, but she did not do so.

## COUNT I: NEGLIGENCE
## V. ALL DEFENDANTS

46. The plaintiff restates and incorporates by reference paragraphs 1-45 of her Complaint as if specifically pleaded herein.

47. Defendants owed a duty to decedent Blais to prevent him from foreseeable harm[3].

48. Defendant Gorham Sand and Gravel, as landowners, owed a duty to all entrants onto their premises to keep them safe from foreseeable harm.[4]

49. Gorham owed a duty to all entrants to its premises to post warning signs indicating caution in deference to the shooting that was allowed to occur there.

---

[3] The scope of a duty is premised on many factors including the foreseeable harms, social policy, "the hand of history, our ideals of morals and justice, the convenience of administration of the rule, and our social ideas as to where the loss should fall." *Cameron v. Pepin*, 610 A.2d 279, 281 (Me. 1992) (quoting *Trusiani v. Camberland & York Distributors, Inc.*, 538 A.2d 258, 261 (Me. 1988)).Gniadek v. Camp Sunshine at Sebago Lake, 2010 Me. Super. LEXIS 10, *13

[4] A possessor of land owes persons lawfully on the property a duty to use reasonable care. Albee v. Trott, 2015 Me. Super. LEXIS 261, *3

6

50. Gorham owed a duty to all entrants to its premises to keep the area safe from foreseeable harms, including to erect fencing and gates to secure the area.

51. Tarr and Mills owed a duty to Blais to render him care immediately after his injury, by being the cause of the injury in the first instance. [5]

52. Tarr owed Blais a duty to prevent the harm which resulted in his death, and/or to provide aid following his injury, by virtue of the special relationship which resulted from Tarr serving as Blais' medical caretaker from June 1, 2018-until the date of his death. [6]

53. It was foreseeable to Tarr and Mills that harm could befall Blais from becoming intoxicated while under the influence of psychiatric medicines on the date of his death.

54. It was foreseeable to Tarr and Mills that allowing Blais to handle a weapon for which he was not trained would result in harm to Blais or others.

55. It was foreseeable to Tarr that alcohol combined with the psychiatric medicines which Tarr administered to Blais on the date of his death would result in the harm of psychiatric side effects.

56. It was foreseeable to Mills that handing his weapon to an untrained individual could result in harm.

---

[5] A party does not have an affirmative duty to aid or warn another person in peril unless the party created the danger or the two people had a special relationship that society recognizes as sufficient to create the duty. Estate of Cummings v. Davie, 2012 ME 43, P1, 40 A.3d 971, 972, 2012 Me. LEXIS 44, *1, 2012 WL 1005089

[6] In a negligence action, the plaintiff must demonstrate that the defendant breached a duty of care owed to the injured party. *Brewer v. Roosevelt Motor Lodge*, 295 A.2d 647, 651 (Me. 1972). "Certain relationships are protective by nature, requiring [*3] the defendant to guard his charge against harm from others." *Bryan R. v. Watchtower Bible and Tract Society of New York, Inc.*, 1999 Me. 144, 738 A.2d 839 (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 53, at 356 (5th ed. 1984). CYR v. ADMAR ASSOCS., 1999 Me. Super. LEXIS 306, *2-3

7

57. It was foreseeable to defendant Gorham Sand and Gravel that allowing individuals to enter their premises to practice shooting without security or precautions in place could result in harm to the entrants.

58. By supplying Blais with alcohol and supplying Blais with a gun, Tarr and Mills acted to cause Blais harm.

59. By Tarr and Mills failing to take the appropriate steps to prevent foreseeable harm to Blais, the defendants breached their duty to him, individually, jointly and severally.

60. By failing to properly secure the premises at Gorham Sand and Gravel from entrants who practiced shooting firearms without supervision or management, the defendant Gorham, breached its duty to Blais.

61. By driving Blais to a liquor store and providing him with alcohol while he was under the influence of psychiatric medicines, Tarr breached her duty to Blais.

62. By negligently entrusting Blais to handle Mills' firearm, Mills breached his duty to Blais.

63. By failing to perceive the risk of their breaches of their duty to Blais based on the foreseeable harm, the defendants were negligent, individually, jointly and severally.[7]

64. By failing to administer aid to Blais when it was clear that he was suffering from impending death due to Mills' creation of the harm, Mills breached his duty to Blais.[8]

---

[7] Whether, under the circumstances of a particular case, one fails to be aware of a risk that his conduct will result in causing death, and whether that failure to perceive such a risk was such as to constitute a gross deviation from the standard of care which a reasonable man would have observed under the same circumstances are questions generally left to the trier of fact. State v. Harrington, 440 A.2d 1078, 1081, 1982 Me. LEXIS 598, *11

[8] The Maine Supreme Court clarified bystander liability in a case that stated that a bystander must perceive the victim's injuries or death as an immediate result of the event. This means that the bystander must have heard or seen the event and then immediately perceived the damage. Me. Rev. Stat. tit. 18-C, § 2-807.2 (2023).

65. By actively creating harm, and also failing to prevent the harm nor administer aid following Blais' injury, based upon the creation of a special relationship as Blais' medical caretaker from June 1, 2018-the date of his death, Tarr breached her duty to Blais.

66. By failing to aid Blais, when she had the last clear chance to render first aid to him after his injury, Tarr breached her duty to Blais.

67. As a direct and proximate result of the negligence of the defendants, the Plaintiff sustained personal injuries, conscious pain and suffering as he lay dying, accumulated medical bills, and suffered great physical and emotional pain.

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

### COUNT II: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### V. ALL DEFENDANTS

68. The plaintiff restates and incorporates by reference paragraphs 1-67 of her Complaint as if specifically pleaded herein.

69. Defendants owed a duty to the plaintiff; breached that duty in multiple ways; caused emotional distress by virtue of their negligence; and as a result, plaintiff was damaged.

70. As pleaded in Count I, the Defendants were negligent in that they breached their duties to the decedent Blais, on December 29, 2018 by[9]:

---

[9] **§8104-C.** In Maine, the elements of a negligent infliction of emotional distress claim are the same as those for an ordinary negligence claim: The defendant owed the plaintiff a duty, The defendant breached that duty, The plaintiff was harmed, and The breach caused the plaintiff's harm. The victim of negligent conduct has a legally protected interest in their psychic health and can recover damages for emotional harm.

9

    a. Acting to create harm to Blais through supplying him with alcohol and supplying him with a firearm;

    b. Failing to prevent foreseeable harm to Blais;

    c. Failing to properly secure the premises with knowledge that individuals enter their premises to practice shooting(defendant, Gorham);

    d. Driving Blais to a liquor store and providing him alcohol while they knew Blais was under the influence of psychiatric medicines administered to Blais by Tarr(Tarr and Mills)

    e. Negligently entrusting Mills' firearm to Blais, who was untrained in handling firearms and to whom Mills knew was under the influence of alcohol and drugs(Mills);

    f. Failing to administer aid to Blais after his injury as required by the special relationship created by Tarr(Tarr);

    g. Failing to administer aid to Blais after creating the danger to Blais by negligently entrusting Mills' firearm to Blais(Tarr and Mills);

    h. In other ways which will be proven at the trial of this matter.

71. As a result of their negligence, the defendants inflicted emotional distress on Blais, and on his family.[10]

---

[10] …The elements of a claim of negligent infliction of emotional distress are similar to most negligence torts: a plaintiff must set forth facts from which it could be concluded that (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was harmed; and (4) the breach caused the plaintiff's harm. Plaintiffs claiming negligent infliction, however, face a significant hurdle in establishing the requisite duty, in great part because the determination of duty in these circumstances is not generated by traditional concepts of foreseeability. Although each person has a duty to act reasonably to avoid causing physical harm to others, there is no analogous general duty to avoid negligently causing emotional harm to others. Curtis v. Porter, 2001 ME 158, P1, 784 A.2d 18, 20, 2001 Me. LEXIS 161, *1

72. As a direct and proximate result of the negligence of the defendants, the Plaintiff sustained personal injuries, conscious pain and suffering while Blais lay dying; accumulated medical bills, and suffered great physical and emotional pain.

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### V. TARR AND MILLS

73. The plaintiff restates and incorporates by reference paragraphs 1-72 of her Complaint as if specifically pleaded herein.

74. Tarr and Mills intentionally[11] and knowingly breached their duties to the decedent Blais, on December 29, 2018 by:

    a. Acting to create harm to Blais through supplying him with alcohol and supplying him with a firearm;

    b. Failing to prevent foreseeable harm to Blais;

    c. Failing to prevent Blais from becoming intoxicated while under the influence of psychiatric medicines administered to Blais by Tarr(Tarr and Mills)

    d. Intentionally entrusting Mills' firearm to Blais, who was untrained in handling firearms and to whom Mills knew was under the influence of alcohol and drugs(Mills);

---

[11] In the context of a tort claim, a person acts "intentionally" if he subjectively wants or subjectively foresees that harm to another will almost certainly result from his actions. Curtis v. Porter, 2001 ME 158, P1, 784 A.2d 18, 20, 2001 Me. LEXIS 161, *1

11

    e. Failing to administer aid to Blais after his injury as required by the special relationship created by Tarr(Tarr);

    f. Failing to administer aid to Blais after creating the danger to Blais by entrusting Mills' firearm to Blais(Tarr and Mills);

    g. In other ways which will be proven at the trial of this matter.

75. Tarr and Mills recklessly disregarded the safety of Blais by intentionally failing to act as it was their duty to do, knowing or having reason to know that their conduct created an unreasonable risk of harm to Blais. [12]

76. Through their reckless disregard of Blais' safety, Tarr and Mills intentionally inflicted emotional distress on Blais, and on his family. [13]

77. Tarr and Mills' intentionally or recklessly inflicted severe emotional distress and/or was certain or substantially certain that such distress would result from their conduct;

78. The conduct of Tarr and Mills was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community;

79. The actions of the defendants caused the plaintiff's emotional distress;

80. The emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

---

[12] An actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable person to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent. Curtis v. Porter, 2001 ME 158, P1, 784 A.2d 18, 20, 2001 Me. LEXIS 161, *1

[13] (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from [his] conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and, (4) the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it. LIBERTY v. BENNETT, 2007 Me. Super. LEXIS 22, *17-18

12

81. As a direct and proximate result of the negligence of the defendants, the Plaintiff sustained personal injuries, conscious pain and suffering while Blais lay dying; accumulated medical bills, and suffered great physical and emotional pain.

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

### COUNT VI: WRONGFUL DEATH V. TARR AND MILLS

82. The plaintiff restates and incorporates by reference paragraphs 1-81 of her Complaint as if specifically pleaded herein.

83. The negligent and/or intentional actions of Tarr and Mills were the proximate cause of the wrongful death of David Blais, the decedent. [14]

84. The plaintiff is the duly appointed personal representative of the estate of David Blais.

85. The negligent and/or intentional actions of Tarr and Mills caused the homicide of David Blais. [15]

---

[14] **Wrongful death action; damages; limitations.** Every wrongful death action must be brought by and in the name of the personal representative or special administrator of the deceased person, and is distributable, after payment for funeral expenses and the costs of recovery including attorney's fees, directly to the decedent's heirs without becoming part of the probate estate, except as may be specifically provided in this subsection. An action under this section must be commenced within 3 years after the decedent's death, except that if the decedent's death is caused by a homicide, the action may be commenced within 6 years of the date the personal representative or special administrator of the decedent discovers that there is a just cause of action against the person who caused the homicide. If a claim under this section is settled without an action having been commenced, the amount paid in settlement must be distributed as provided in this subsection. A settlement on behalf of minor children is not valid unless approved by the court, as provided in Title 14, section 1605. Me. Rev. Stat. tit. 18-C, § 2-807.2 (2023).

[15] Homicide is the killing of one person by another, and in Maine it can include murder, felony murder, and manslaughter: Causing death through reckless or criminally negligent actions. Involuntary manslaughter occurs when a person's negligent actions cause another person's death. The person was aware that his actions were negligent but chose to continue with the action. Title 17 §203. Manslaughter

13

86. The negligent and/or intentional actions of Tarr and Mills in creating harm to Blais through supplying him with alcohol and with a firearm, and, failing to prevent foreseeable harm to Blais were a gross deviation in the standard of conduct that a reasonable and prudent person would observe in the same situation, and comprises negligent manslaughter. [16]

87. The negligent and/or intentional actions of Tarr and Mills which led to the homicide of Blais were discovered in the course of discovery by the plaintiff.

88. Following the injury to Blais, he suffered conscious pain and suffering while he lay dying, and during the time that Tarr and Mills refused to render aid to him for his injuries.[17]

89. As a direct and proximate result of the negligence of the defendants, the Plaintiff sustained personal injuries, conscious pain and suffering while Blais lay dying; accumulated medical bills, and suffered great physical and emotional pain.

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

---

[16] Criminally negligent manslaughter exists when one by his conduct causes the death of another and fails to be aware of the risk posed by that conduct. Me. Rev. Stat. Ann. tit. 17-A, §§ 10(4)(A), 203(1)(A) (Supp. 1980). The failure to be aware of the risk, when viewed in the light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation. State v. Harrington, 440 A.2d 1078, 1078, 1982 Me. LEXIS 598, *1

[17] **Damages for conscious suffering.** Whenever death ensues following a period of conscious suffering, as a result of personal injuries due to the wrongful act, neglect or default of any person, the person who caused the personal injuries resulting in such conscious suffering and death is, in addition to the action at common law and damages recoverable therein, liable in damages in a separate count in the same action for such death, brought, commenced and determined and subject to the same limitation as to the amount recoverable for such death and exclusively for the beneficiaries in the manner set forth in subsection 2, separately found, but in such cases there is only one recovery for the same injury. Me. Rev. Stat. tit. 18-C, § 2-807.2

## COUNT V: NEGLIGENT ENTRUSTMENT OF FIREARM V. DYLON MILLS

90. The plaintiff restates and incorporates by reference paragraphs 1-89 of her Complaint as if specifically pleaded herein.

91. The firearm[18] which was used in the injury and subsequent death of the decedent, David Blais, was owned and controlled by defendant Mills.

92. In Maine, pursuant to Title 29-A, Sec. 1408, Mills was licensed to carry the firearm.

93. By entrusting his firearm to Blais, whom Mills knew, or should have known, had no training or experience in using firearms, Mills was negligent. [19]

94. By entrusting his firearm to Blais, whom Mills knew, or should have known, was intoxicated and under the influence of psychiatric drugs, Mills was negligent.

95. As a direct and proximate result of the negligence of the defendants, the Plaintiff sustained personal injuries, suffered conscious pain and suffering; accumulated medical bills, and suffered great physical and emotional pain.

---

[18] *See* 15 M.R.S. § 393(7)(A) (2024) ("As used in this section . . . 'Firearm' has the same meaning as in Title 17-A, section 2, subsection 12-A."). The referenced statute defines a "[f]irearm" as "any weapon, whether loaded or unloaded, which is designed to expel a projectile by the action of an explosive and includes any such weapon commonly referred to as a pistol, revolver, rifle, gun, machine gun or shotgun. Any weapon which can be made into a firearm by the insertion of a firing pin, or other similar thing, or by repair, is a firearm." 17-A M.R.S. § 2(12-A) (2024) State v. Dennis, 2024 ME 54, P9, 320 A.3d 396, 398, 2024 Me. LEXIS 59, *4

[19] the entrustee was incompetent, inexperienced, or reckless; (2) the entrustor knew or had reason to know of the entrustee's condition or proclivities; (3) there was an entrustment of the chattel; (4) the entrustment created an appreciable risk of the harm to the plaintiff and a relational duty on the part of the defendant; and (5) the harm to the plaintiff was proximately caused or legally [*6] caused by the negligence of the defendant. McGinley v. Liberty Ins. Holdings, Inc., 2012 Me. Super. LEXIS 60, *5-6

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

## COUNT VI: FRAUD AND MISREPRESENTATION
## V. TARR AND MILLS

96. The plaintiff restates and incorporates by reference paragraphs 1-95 of her Complaint as if specifically pleaded herein.

97. Tarr and Mills committed fraud[20] upon the decedent Blais.

98. Tarr represented to Blais that she had professional medical knowledge and expertise, and thus became his medical caretaker and administered to him his medicines daily, including on the date he died.

99. Blais detrimentally relied on Tarr's representation as to her medical knowledge and expertise.

100.  In falsely representing her medical expertise to Blais, Blais relied upon Tarr's representations of professional medical knowledge and experience, to his detriment.

101.  Tarr and Mills fed Blais alcohol when she knew he was under the influence of psychiatric medicines, which, by virtue of her representation to Blais, she knew, or should have known, would cause side effects and harm to him.

102.  Mills represented to Blais that he was safe to be entrusted with a firearm.

---

[20] (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance on it, and (5) the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff. *Sherbert v. Remmel*, 2006 ME 116, ¶ 4 n.3, 908 A.2d 622 Drilling & Blasting Rock Specialists, Inc. v. Rheaume, 2016 ME 131, P17, 147 A.3d 824, 829, 2016 Me. LEXIS 143, *9

103. Mills represented to Blais that he had knowledge and experience in handling firearms.

104. Blais relied on Mills' representations to his detriment, as Blais was injured as a result.

105. Following the injury, Mills cleaned the firearm, removed the bullets, and locked the firearm in Mills' vehicle, in an attempt to hide the evidence which led to Blais' death.

106. As a direct and proximate result of the fraudulent conduct of the defendants, the Plaintiff sustained personal injuries, experienced conscious pain and suffering; accumulated medical bills, and suffered great physical and emotional pain.

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Sally Blais, demands judgment against the Defendants for all claims above together with interest, costs, attorneys' fees, double or treble damages and any other damages allowable by law.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS OF HER COMPLAINT**

Respectfully submitted,

*/s/ Joseph M. Orlando Jr.*
JOSEPH M. ORLANDO JR. ESQ.
BBO #680995
JOSEPH M. ORLANDO ESQ.
BBO #381215
ME Bar No. 006230
AMANDA ORLANDO ESQ.

                                                BBO #714411  
                                                Orlando & Associates, P.C.  
                                                One Western Avenue  
                                                Gloucester, MA 01930  
                                                978-283-8100 ext. 2  
                                                jmorlandojr@orlandoassociates.com  
                                                aorlando@orlandoassociates.com

Date: 12/26/2024