UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| SALLY BLAIS, *as Personal Representative of the Estate of David Blais*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 2:24-cv-00456-JAW |
| DYLON MILLS, et al., | ) ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS TO DISMISS**

A mother, on behalf of her son, sued two individuals and a business operator under various theories of tort liability after her son died of a gunshot wound while with the individual defendants and while present at the defendant business operator's premises. One individual defendant and the business operator defendant separately moved to dismiss the complaint as time-barred, already litigated, and for failure to state a claim. Concluding the claims against the business cannot survive because all tort claims are precluded by Maine's wrongful death statute and no wrongful death action was brought—or could be brought—against the business, the court grants the business operators motion to dismiss. The court, however, declines to award the business costs and fees because the dismissal of the business is not based on the fee-shifting statute. As for the individual defendant, while the plaintiff has plausibly plead wrongful death by homicide, increasing the statute of limitations, the doctrine of res judicata requires dismissal of all claims against the individual defendant in a prior action and thus his motion is granted.

## I.    PROCEDURAL HISTORY

On December 27, 2024, Sally Blais, as personal representative of the Estate of her son David Blais, filed a complaint alleging that Dylon Mills, Mary Kenneth Tarr[1], and Gorham Sand & Gravel, Inc. (GSG) (Defendants) are liable for negligence (Count One) and negligent infliction of emotion distress (Count Two), that Mr. Mills and Ms. Tarr are liable for intentional infliction of emotional distress (Count Three), wrongful death (Count Four), and fraud and misrepresentation (Count Six), and that Ms. Mills is additionally liable for negligent entrustment of firearm (Count Five).  *Pl.'s Compl. and Jury Trial Demand* (ECF No. 1) (*Compl.*).

On March 25, 2025, GSG filed a motion to dismiss for failure to state a claim. *Def. Gorham Sand & Gravel's Mot. to Dismiss* (ECF No. 9) (*GSG's Mot.*).  On April 9, 2025, Mr. Mills filed a motion to dismiss.  *Mot. to Dismiss by Dylon Mills* (ECF No. 15) (*Mills's Mot.*).  On April 29, 2025, Ms. Blais filed her opposition to the motions to dismiss.  *Pl.'s Consolidated Opp'n to Mots. to Dismiss Filed by Gorham Sand and Gravel (Doc. 9) and Dylon Mills (Doc. 15)* (ECF No. 23) (*Pl.'s Opp'n*); *id.*, Attach. 1, *Pl.'s Mem. of Law in Support of her Consolidated Opp'n to Mots. to Dismiss Filed by Gorham Sand and Gravel (Doc. 9) and Dylon Mills (Doc. 15)* (*Pl.'s Opp'n Mem.*).  On May 6, 2025, Mr. Mills filed his reply.  *Reply for Mot. to Dismiss by Dylon Mills* (ECF No. 25) (*Mills's Reply*).  On May 19, 2025, GSG filed its reply.  *Def. Gorham Sand & Gravel's Reply in Support of its Motion to Dismiss* (ECF No. 28) (*GSG's Reply*).

On August 6, 2025, the Court issued an order to show cause as to why Ms. Tarr

---

[1]    Defendant Tarr is alleged to also go by the names Mary Blais, Mary Kate Blais, and Mary Lopez. *Pl.'s Compl. and Jury Trial Demand*, ¶ 3 (ECF No. 1).

2

had not been served within ninety days of the filing of the complaint. *O.S.C.* (ECF No. 32). On September 5, 2025, Ms. Blais filed a responsive memorandum detailing efforts to serve the complaint on Ms. Tarr. *Pl.'s Mem. Regarding Service Upon Def. Mary Kenneth Tarr A/K/A Mary Blais A/K/A Mary Kate Blais A/K/A Maria Lopez and Request to Deem Service Allowed as Completed by Service at Last Usual Residence and/or Via Regular Mail* (ECF No. 34) (*Resp. to First O.S.C.*). Also on September 5, 2025, Ms. Blais filed a motion to deem service completed as to Ms. Tarr, *Pl.'s Mot. to Deem Service Allowed as Completed by Service at Last and Usual Residence and/or by Regular Mail* (ECF No. 35), which the Magistrate Judge denied on November 19, 2025. *Order on Pl.'s Mot. to Deem Service Completed* (ECF No. 36).

On January 26, 2026, the Magistrate Judge issued an order to show cause as to why service has not been made on Ms. Tarr and setting a deadline of February 9, 2026 for response, after which the Court would be free to dismiss Ms. Blais's complaint against Ms. Tarr. *O.S.C.* (ECF No. 38) (*Second O.S.C.*). On February 9, 2026, Ms. Blais responded. *Pl.'s 2nd Mem. Regarding Service Upon Def. Mary Kenneth Tarr A/K/A Mary Blais A/K/A Mary Kate Blais A/K/A Maria Lopez Pursuant to the Court's "Show Cause" Order Doc. 38 and Pl.'s Mot. to Make Service by Alternative Means Pursuant to Maine Local Rule 4(g)(1)* (ECF No. 39) (*Resp. to Second O.S.C.*).

On February 9, 2026, Ms. Blais filed a request for a Rule 16 conference. *Req. For Rule 16 Conf.* (ECF No. 40). On February 24, 2026, the Magistrate Judge issued an order on Plaintiff's response to the second order to show cause allowing the Plaintiff until April 24, 2026 to serve Ms. Tarr. *Order on Pl.'s Resp. to Show Cause*

*Order* (ECF No. 42) (*Order Second O.S.C.*).[2]  On February 27, 2026 the Court convened a Conference of Counsel.  *Min. Entry* (ECF No. 43).

## II.   MOTION TO DISMISS FACTUAL RECORD[3]

### A.   David Blais Meets Mary Kenneth Tarr and Dylon Mills in June 2018 as He Experiences an Onset of Psychiatric Distress

Sally Blais is the personal representative of the estate of her son, David Blais, who died on December 29, 2018.  *Compl.* ¶ 1.  Mr. Blais met Mary Kenneth Tarr, an unemployed nursing assistant, online in or around May of 2018 when he was 33 and she was 49 years old.  *Id.* ¶¶ 8-10.  Around June 1, 2018, Ms. Tarr moved into Mr. Blais's residence, serving as his personal medical assistant and caretaker.  *Id.* ¶ 10. Shortly thereafter, Mr. Blais began experiencing psychiatric distress for the first time in his life and displaying emotional and mental health symptoms to his family, friends, and employer of three years.  *Id.* ¶ 11-12.  The psychiatric distress coincided with Defendant Tarr moving into Mr. Blais's home and becoming his caretaker.  *Id.* ¶ 12.  Dylon Mills, a friend of Ms. Tarr, also met Mr. Blais around this time and both remained actively involved in Mr. Blais's life while Mr. Blais experienced the psychiatric distress and other symptoms that began in the months after meeting Ms.

---

[2]    Ms. Blais has not yet served Mary Kenneth Tarr.  *See Order Second O.S.C.* at 3 n.1.  In addition to the potential jurisdictional issue discussed in footnote 1 of the February 24, 2026 order to show cause, *see id.*, the res judicata rationale, discussed below, that requires the dismissal of Ms. Blais's claims against Mr. Mills would appear to apply with equal force to her claims against Ms. Tarr.

[3]    Consistent with the motion to dismiss standard, the Court relies on the complaint's well-pleaded facts.  "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"  *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

Tarr.  *Id.* ¶¶ 13-14.

### B.    David Blais is Admitted to In-Patient Hospitalization

On June 22, 2018, Mr. Blais was admitted to in-patient psychiatric care at Partners Salem Hospital where he stayed for a 24-days, ending on July 16, 2018.  *Id.* ¶ 15.  Ms. Tarr and Mr. Mills visited Mr. Blais during his in-patient stay.  *Id.* ¶ 19. Upon release, the medical staff determined that Mr. Blais had improved while in-patient, and he was released to Ms. Tarr's care.  *Id.* ¶ 22.  Following the release, Mr. Blais began a rapid mental and emotional decline, again experiencing psychiatric symptoms.  *Id.* ¶ 23.  After his release from Partners Salem Hospital, Mr. Blais underwent out-patient psychiatric care from July 17, 2018 until his death on December 29, 2018.  *Id.* ¶ 16.

### C.    David Blais's Dependence on Mary Kenneth Tarr

Between June 1, 2018 and December 29, 2018, Mary Kenneth Tarr managed Mr. Blais's care, including managing his bills, finances, rent, and new unemployment claims.  *Id.* ¶ 17.  Ms. Tarr also managed Mr. Blais's medical care—monitoring his medications, controlling his medical intake and amounts, making and controlling his medical and psychiatric appointments, and controlling his day-to-day activities.  *Id.* ¶¶ 18, 20.  Ms. Tarr's professional history as a nursing assistant afforded her knowledge of the potential side effects of all Mr. Blais's medications.  *Id.* ¶ 21. Further, Ms. Tarr represented to Mr. Blais and others that she had knowledge and experience to undertake the day-to-day care of Mr. Blais between June 1, 2018 and December 29, 2018.  *Id.*  Between June 1, 2018 and until his death in December of 2018, Mr. Blais reported to family that he did not know what was wrong with him

and why he was no longer himself.  *Id.* ¶ 26.  By October of 2018, Mr. Blais was dependent on Ms. Tarr, unable to drive a vehicle, and unable to find his way off Nahant Island, where he lived.  *Id.* ¶ 27.

### D.    David Blais Unexpectedly Marries Mary Kenneth Tarr

On August 6, 2018, Mr. Blais and Ms. Tarr unexpectedly married.  *Id.* ¶ 24.  At the time, Mr. Blais was unemployed and undergoing intense out-patient psychiatric treatment.  *Id.*  Ms. Tarr did not inform the select majority of Mr. Blais's family—including his mother, Sally Blais—of the ceremony.  *Id.* ¶ 25.

### E.    Mary Kenneth Tarr and Dylon Mills take David Blais to GSG's Premises where David Blais Dies by Gunshot Wound

On December 28, 2018, Steven Lanciotti, a college friend of Mr. Blais, spoke with an incoherent Mr. Blais by phone.  *Id.* ¶ 28.  Out of concern for Mr. Blais's health and well-being, Steven Lanciotti attempted emergency contact with Mr. Blais's family that night.  *Id.*  By late December of 2018, Mr. Blais had been unable to drive for about two months and could only travel if taken by Ms. Tarr or Mr. Mills.  *Id.* ¶¶ 27, 30.  On December 29, 2018, Ms. Tarr and Mr. Mills organized a day trip with Mr. Blais to Maine.  *Id.* ¶ 29.

On their way to Maine, the three stopped at a highway liquor store where Mr. Blais consumed alcohol under the care of Ms. Tarr and Mr. Mills who were aware of the strong psychiatric medications Mr. Blais had taken that day at Ms. Tarr's direction.  *Id.* ¶ 31.  After the liquor store, the three stopped in Saco, Maine at the apartment of Ms. Tarr and Mr. Mill's daughter before reaching the premises of GSG in Lyman, Maine.  *Id.* ¶¶ 32-33.

Its common practice for individuals to use the GSG premise for practice shooting. *Id.* ¶ 35. GSG was aware that individuals entered its land and used the premises for shooting practice. *Id.* ¶ 36. Nonetheless, GSG had no security in place to address individuals using its premises for practice shooting, GSG failed to pose warning or cautions signs to entrants onto its land about shooting, and GSG failed to erect fencing or a gate to keep individuals from using its premises for shooting practice. *Id.* ¶¶ 35-38.

Mr. Mills gave Mr. Blais a gun registered to Mr. Mills. *Id.* ¶¶ 33-34. Mr. Mills was aware that Mr. Blais had no training or experience with guns. *Id.* ¶ 39. Ms. Tarr and Mr. Mills were further aware of the amounts of psychiatric medication and alcohol Mr. Blais had consumed. *Id.* ¶ 40. Ms. Tarr and Mr. Mills did not monitor nor supervise Mr. Blais's use of the gun. *Id.* ¶¶ 40-41. Mr. Blais then fired the gun, receiving a gunshot wound. *Id.* ¶ 41.

After the shooting, before the police arrived, Mr. Mills took the weapon, emptied the remaining bullets, cleaned the firearm, and locked it in the glove compartment of his truck. *Id.* ¶ 42. Neither Ms. Tarr nor Mr. Mills attempted to perform CPR or other life saving measures to assist Mr. Blais after the gunshot. *Id.* ¶ 43. Despite Ms. Tarr's claim to have professional medical knowledge and training, she did not assist Mr. Blais after the gunshot nor administer any life saving care. *Id.* ¶¶ 44-45.

## III.   THE PARTIES' POSITIONS

### A.   The Plaintiff's Complaint

The Plaintiff's complaint brings six counts against the Defendants and seeks a

7

jury trial in addition to judgment against all the Defendants as well as interest, costs, attorneys' fees, double or treble damages, and any other allowable damages. *Compl.* at 17.

### 1.   Count One: Negligence by All Defendants

The Plaintiff alleges that each Defendant was negligent. The Plaintiff argues Ms. Tarr and Mr. Mills owed Mr. Blais a duty to prevent foreseeable harm by virtue of their special relationship with him; they breached their duty by furnishing alcohol and a gun to him while on psychiatric medications, failing to administer aid, and, in Ms. Tarr's case, by failing to prevent the harm; it was foreseeable that the combination of psychiatric medications, alcohol, and a gun in untrained hands would pose danger; and facilitating Mr. Blais's consumption of medication and alcohol and access to a gun caused Mr. Blais harm. *Compl.* ¶¶ 46-47, 51-56, 58-59, 61-67.

The Plaintiff likewise argues that GSG owed a duty to entrants to keep them safe from foreseeable harm; they breached their duty by failing to provide warning signs or fencing; and it was foreseeable that allowing entrants to practice shooting without precautions or would result in harm; and by failing to secure the premises. *Id.* ¶¶ 46, 48-50, 57, 60, 67.

### 2.   Count Two: Negligent Infliction of Emotional Distress by All Defendants

The Plaintiff argues that the Defendants' negligence inflicted emotional distress on Mr. Blais and his family: "[a]s a direct and proximate result of the negligence of the defendants, the Plaintiff sustained personal injuries, conscious pain and suffering while Blais lay dying; accumulated medical bills, and suffered great

physical and emotional pain." *Id.* ¶¶ 68-72.

### 3. Count Three: Intentional Infliction Emotional Distress by Mary Kenneth Tarr and Dylon Mills

The Plaintiff also brings a claim of intentional infliction of emotional distress against Defendants Tarr and Mills, arguing that their reckless disregard of Blais's safety, Tarr and Mills intentionally inflicted emotional distress on Blais, and on his family." *Id.* ¶¶ 73-81.

### 4. Count Four: Wrongful Death by Mary Kenneth Tarr and Dylon Mills

The Plaintiff argues that the negligent and intentional actions of Defendants Tarr and Mills proximately caused the wrongful death of Mr. Blais. *Id.* ¶¶ 82-89. The Plaintiff further alleges that Defendants Tarr and Mills' actions "led to the homicide of Blais" and "were discovered in the course of discovery by the plaintiff." *Id.* ¶ 87.

### 5. Count Five: Negligent Entrustment of Firearm by Dylon Mills

The Plaintiff brings a claim against Defendant Mills for negligent entrustment of a firearm arguing that "[b]y entrusting his firearm to Blais, whom Mills knew, or should have known, had no training or experience in using firearms, Mills was negligent." *Id.* ¶¶ 90-95.

### 6. Count Six: Fraud and Misrepresentation by Mary Kenneth Tarr and Dylon Mills

The Plaintiff brings claims of fraud and misrepresentation against Defendants Tarr and Mills. *Id.* ¶¶ 96-106. For Ms. Tarr, the Plaintiff claims that she misrepresented her medical knowledge and expertise, Mr. Blais relied on these

9

representations, and Ms. Tarr, "by virtue of her representation to Blais, . . . knew, or should have known" that mixing alcohol and psychiatric medication "would cause side effects and harm to him."  *Id.* ¶ 101.  For Mr. Mills, the Plaintiff claims that Dylon "Mills represented to [Mr.] Blais that he had knowledge and experience in handling firearms" and that Mr. Blais relied on those representations to his detriment.  ¶¶ 102-104.

### B.   GSG's Motion to Dismiss

GSG moves to dismiss the Plaintiff's complaint arguing that "Plaintiff's claims for negligence and negligent infliction of emotional distress cannot survive independently of Maine's Wrongful Death statute, and because such a claim is time-barred as to GSG, this suit must be dismissed."  *GSG's Mot.* at 1.  To the extent that the Plaintiff argues the longer, six-year statute of limitations applies in a homicide case, GSG makes clear both that GSG is not alleged to have caused the homicide and that the exception applies only to a person, not a corporation.  *Id.* at 4.  GSG also asks for costs and fees under a statute.

### C.   Dylon Mills's Motion to Dismiss

Dylon Mills seeks to dismiss the Plaintiffs complaint and all claims against him for three reasons.  First, the case is barred by res judicata.  This is the third time that "Sally Blais has filed a lawsuit against Dylon Mills arising out of the suicide of her son, David Blais, on December 29, 2018."  *Mills's Mot.* at 1.  The first case, a wrongful death case in Maine Superior Court, was dismissed without prejudice because it was not brought in the name of the estate.  *Id.*  The second, also a wrongful death case, was filed on December 27, 2021 in Massachusetts under a three year

statue of limitations, but the Massachusetts court dismissed the case, having determined that Maine's interests predominated and thus the Maine two year statute of limitations applied. *Id.* at 1, 5; *id.*, Attach. 10, *Mem. of Decision and Order on Dylon Mills's Mot. to Dismiss (Paper No. 10)* (*Second Dismissal*). Second, the Massachusetts Court ruled that the complaint is barred by the statute of limitations—the statute of limitations for wrongful death is two years and no independent tort claims survive without the time-barred wrongful death claim. Third, Dylon Mills argues he is not liable for the harm Mr. Blais inflicted on himself.

## D.     The Plaintiff's Opposition

Ms. Blais opposes the motions to dismiss, claiming that defendants owed Mr. Blais a duty, the complaint was timely filed within the statute of limitations, and res judicata does not apply. *Pl.'s Opp'n* at 1. The Plaintiff reasserts that Defendant GSG took no precautions to prevent harm to the individuals that came to the gravel pit for shooting practice. *Pl.'s Opp'n Mem.* at 2-3.[4] The Plaintiff likewise reasserts that Defendant Mills owed Mr. Blais a duty of care because he was aware of the mental distress Mr. Blais was experiencing and that he had a duty, as a gun owner, to prevent harm to Mr. Blais. *Id.* at 5-6.

Ms. Blais opposes GSG and Mr. Mills's statute of limitations arguments because, according to Ms. Blais, a six-year statute of limitations applies to the personal injury tort claims and the wrongful death action also has a six-year statute of limitations because it was caused by homicide, thus the complaint was timely filed.

---

[4]     The memorandum does not include page number so, for reference, the Court uses the page number of clerk's stamp.

11

*Id.* at 7-8.

Lastly, Ms. Blais claims that res judicata does not apply because "the second dismissal on the issue of choice of law does not operate as a final judgment on the merits." *Id.* at 9-10. Additionally, Ms. Blais argues that the claims have not reached a final conclusion on the merits because where the prior complaints alleged Mr. Blais's death was a suicide, this complaint alleges that his death was "a homicide, which resulted from the negligent, intentional, and reckless actions" of Mr. Mills. *Id.* at 10.

### E. GSG's Reply

GSG reiterates that Ms. Blais's claims are precluded by Maine's wrongful death statute and are time-barred. *GSG's Reply* at 1.

### F. Dylon Mills's Reply

Dylon Mills' reply argues that a third-party cannot be liable for harm to a person that is self-inflicted; Ms. Blais cannot bring claims independent of the wrongful death statute which is time-barred; and her argument that res judicata does not apply cannot withstand scrutiny as it relies on misrepresentations and the bald allegation that Mr. Blais's death was a homicide does not mean the complaint brings a new claim. *Mills's Reply* at 1-7.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, at minimum, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In

other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (first quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012); and then quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). Evaluating the plausibility of a claim is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

This is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*,

13

734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.    DISCUSSION

The Court dismisses Ms. Blais's complaint because it "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In making this determination, the Court considers the entire record, inclusive of prior-filed public judicial actions. The Court grants GSG's motion to dismiss, concluding that the claims are time-barred, but denies GSG's request for costs and fees. The Court grants Mr. Mills' motion to dismiss because although Ms. Blais plausibly pled death by homicide, increasing the state of limitations to six years, the claims could have been brought in the prior litigation and thus the doctrine of res judicata requires dismissal.

### A.    Additional Documents the Court May Consider

"Ordinarily," when reviewing a Rule 12(b)(6) motion, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citing FED. R. CIV. P. 12(b)(6)). However, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Id.* (citing caselaw).

Under *Watterson*, the Court may consider documents attached to Defendant Mills' motion to dismiss. *Id.* The parties appear to agree that the attached documents are what they appear to be and no party has challenged their authenticity. FED. R. EVID. 901, 1003. Furthermore, the attached documents are official public records,

14

are central to Ms. Blais's claims, and are sufficiently referred to in the complaint. *See e.g.*, *Compl.* at 1 (discussing two prior matters Ms. Blais filed related to her son's death). *Watterson*, 987 F.2d at 3. These documents include:

- Ms. Blais's first complaint, filed in Maine at the York County Superior Court. *Mills's Mot.*, Attach. 1, *Compl.* (*First Compl.*).

- The York County Superior Court's order of dismissal in the first case. *Id.*, Attach. 5, *Order of Dismissal* (*First Dismissal*).

- Ms. Blais's second complaint, filed in Massachusetts at the Essex County Superior Court. *Id.*, Attach. 6, *Compl.* (*Second Compl.*).

- The Essex County Superior Court's order of dismissal in the second case. *Second Dismissal*.

The Court may consider these motions and orders for the additional reason that they are public records subject to judicial notice. *See E.I. Du Pont de Nemours & Co., Inc. v. Cullen*, 791 F.2d 5, 7 (1st Cir. 1986) (federal court may take judicial notice of complaint filed in related case even though neither party placed complaint in the record); *see also Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) ("[T]he jurisprudence of Rule 12(b)(6) permits courts to consider matters that are susceptible to judicial notice"); *Boateng v. InterAmerican Univ.*, 210 F.3d 56, 60 (1st Cir. 2000) (a court "may look to matters of public record in deciding a Rule 12(b)(6) motion").

**B.     The Court Grants GSG's Motion to Dismiss, but Declines to Award Costs and Fees**

Sally Blais's claims on behalf of her son cannot survive because all tort claims

15

against GSG are subsumed by Maine's wrongful death statute, and Ms. Blais has not brought and could not bring a wrongful death claim against GSG. *See Compl. Count VI* (wrongful death count against Ms. Tarr and Mr. Mills only). The Court denies GSG's request for costs and fees.

### 1. The Plaintiff's Tort Claims are Precluded by the Wrongful Death Statute

The Plaintiff, standing in the place of her late son, cannot bring either claim—Count One (negligence) or Count Two (negligent infliction of emotional distress (NIED))—against GSG as a standalone claim because each is precluded by Maine's wrongful death statute. 18-A M.R.S. § 2-804.[5] At common law, "a cause of action

---

[5] Title 18-A was recodified as Title 18-C effective September 1, 2019, and the current statute governing wrongful death claims appears at 18-C M.R.S. § 2-807 (2023). On December 28, 2018, the date of Mr. Blais's death, 18-A M.R.S. § 2-804 was the applicable statute.

Effective September 1, 2019, the Maine Legislature increased the maximum amount of damages due to wrongful death from $500,000 to $750,000, and effective October 25, 2023, the Legislature increased the maximum amount to $1,000,000. *See* 2019 Me. Laws 198; 2023 Me. Laws 390.

The Maine Legislature has also amended the statute of limitations. On December 28, 2018, the general statute of limitations for wrongful death actions was two years. 18-A M.R.S. § 2-804. However, effective October 25, 2023, the Maine Legislature increased the general statute of limitations to three years. 2023 Me. Laws 390. Throughout this time, the Maine wrongful death statute imposed a six-year statute of limitations "if the decedent's death is caused by homicide" in which case, the statute of limitations commences "the date the personal representative of the decedent discovers that there is a just cause of action against the person who caused the homicide." 18-A M.R.S. § 2-804(b); 18-C M.R.S. § 807(2).

The Maine Supreme Judicial Court has held that "[t]he statute governing a wrongful death action is the one in effect at the time of the death." *Smith v. Henson*, 2025 ME 55, ¶ 5, n.3, 339 A.3d 816. Thus, under *Smith*, the version of Maine's wrongful death statute applicable to this case is the one that existed as of December 28, 2018.

In any event, none of these statutory changes affects the Court's ruling on the pending motions to dismiss. Sally Blais did not file this civil action until December 27, 2024, well beyond the expiration of either the two- or three-year general statute but just within the six-year homicide statute. The phrase, "the date the personal representative discovers that there is a just cause of action against the person who caused the homicide," does not affect this determination.

16

could not survive the decedent." *Krempels v. Mazyck*, 868 F. Supp. 355, 357 (D. Me. 1994) (citing Donald N. Zillman, *et al.,* MAINE TORT LAW § 19.06, at 19-21).

Maine enacted a wrongful death statute to reverse this common law rule. *Id.* Thus, "[r]ecovery for wrongful death in Maine is a purely statutory right" and "beneficiaries of such an action are limited to the remedies specifically provided" in the statute. *Id.* at 357-58; *Smith v. Henson*, 2025 ME 55, ¶ 41, 339 A.3d 816 ("Any wrongful death claim arises by statute alone"); *Carter v. Williams*, 2002 ME 50, ¶ 19, 792 A.2d 1093 ("The beneficiaries of the wrongful death statute are limited to the remedies provided therein"); *Feighery v. York Hosp.*, 38 F. Supp. 2d 142, 157 (D. Me. 1999) ("Recovery for wrongful death in Maine is a purely statutory right").  Thus, each of Plaintiff's six counts would only be allowed insofar as the Wrongful Death Statute allows them, and those claims are time-barred.

Both Counts One and Two allege "conscious pain and suffering while [Mr.] Blais lay dying."  *Compl.* ¶¶ 67, 72.  Although the statute allows for recovery "[w]henever death ensues following a period of conscious suffering," the person "who caused the personal injuries resulting in such conscious suffering and death is, in addition to the action at common law and damages recoverable therein, liable in damages in a separate count in the same action for such death, brought, commenced and determined and subject to the same limitation as to the amount recoverable for such death."  18-C M.R.S. § 2-807(3).  For the reasons discussed below, each of Plaintiff's claims for alleged conscious pain and suffering is time-barred.

To the extent Ms. Blais also alleges emotional distress suffered by family

members, *Compl.* ¶ 71 (Count Two), those claims are also precluded by the Wrongful Death Statute. The Maine Supreme Judicial Court has explained that the Wrongful Death Statute "does not distinguish between cases in which the heirs witness the death of the decedent, but instead explicitly states that the maximum recovery includes all emotional distress damages arising from the same facts." *Carter*, 2002 ME 50, ¶ 14, 792 A.2d 1093. Accordingly, because Count Two (NIED) is "based on the same facts as their wrongful death claim," the Court can "properly conclude[ ] that [the Plaintiff] may not bring NIED claims separate from the wrongful death claim." *Id.*

###### 2.     The Statute of Limitations and the Wrongful Death Action

As noted earlier, Ms. Blais has not claimed that GSG is liable under Maine's wrongful death statute. *See Compl.* Count VI (asserting wrongful death against Ms. Tarr and Mr. Mills only). Ms. Blais is the master of her own complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394-95 (1987) (describing plaintiffs as "masters of the complaint"); *Hamel v. W. Mass. Elec. Co.*, 2023 U.S. Dist. LEXIS 246344, at *14 (D. Mass. Aug. 4, 2023) (Plaintiffs "are the masters of their own complaint"). Ms. Blais has chosen, presumably for good reason, not to include GSG in her wrongful death claim, and, therefore, if she could have brought a wrongful death claim against Defendant GSG (and the Court is not suggesting she could or should have) within the six-year statute of limitations, she did not, and now it is too late.

###### 3.     The Court Denies GSG's Motion for Costs and Fees

GSG seeks costs and fees pursuant to Maine's Limited Liability for Recreational or Harvesting Activities Statute, which provides that "[t]he court shall

award any direct legal costs, including reasonable attorneys' fees, to an owner, lessee, manager, holder of an easement or occupant who is found not to be liable for injury to a person or property pursuant to this section." 14 M.R.S. § 159-A(6); *see also GSG's Mot.* at 7 (citing 14 M.R.S. § 159-A(6)).

The Court denies GSG's motion for costs and fees. To fit within the fee-shifting provision of § 159-A(6), GSG would have to have been found not liable "pursuant to [§ 159-A]," Maine's Limited Liability for Recreational or Harvesting Activities statute. But the Court is dismissing GSG not pursuant to that statute, but because Ms. Blais may not file a general tort claim on behalf of the decedent, and she has not filed a wrongful death claim against GSG.

As the Maine Supreme Judicial Court explained, "[o]ne of the purposes of the limited liability rule of the recreational use statute is to encourage landowners to allow recreational use of the Maine woodlands that are rich with opportunities for hunting, fishing, and other recreational activities." *Robbins v. Great Northern Paper Co.*, 557 A.2d 614, 616-17 (Me. 1989). The apparent intent of the fee shifting provision is to make certain that landowners who allow such recreational uses of their property and who are sued despite the protection of the statute are not forced to pay their own attorney's fees and costs for successfully defending a lawsuit pursuant to the statute. Here, it was the peculiarities of Maine's wrongful death statute, not Maine's Limited Liability for Recreational or Harvesting Activities statute that absolved GSG so the policies underlying the fee-shifting provision do not come into play.[6] The same policy

---

[6]   GSG also argues that target practicing, if that is what Mr. Blais, Ms. Tarr, and Mr. Mills were doing before he was shot, fits within the statutory definition of "recreational or harvesting activities"

considerations to encourage landowners to allow recreational or harvesting activities on their land do not apply when a defendant successfully obtains dismissal of a case based on other defenses.

### C.    The Court Grants Dylon Mills' Motion to Dismiss

Although Ms. Blais plausibly pleaded wrongful death by homicide, increasing the applicable statute of limitations to six years, the wrongful death by homicide claim could have been brought in the prior litigation and thus the doctrine of res judicata requires the Court dismiss all claims against Ms. Mills.

### 1.    The Plaintiff's Has Plausibly Plead Wrongful Death by Homicide

Ms. Blais plausibly plead wrongful death by homicide, qualifying her for a six-year statute of limitations.  Ms. Blais's claims against Dylon Mills—Count One (negligence), Count Two (NIED), Count Three (intentional infliction of emotional distress (IIED)), Count Four (wrongful death), Court Five (Negligent Entrustment of Firearm), and Count Six (Fraud and Misrepresentation)—are only allowable to the extent permitted by Maine's Wrongful Death Statute.  18-A M.R.S. § 2-804; *see* discussion *supra* Section B.1.  The Wrongful Death Statue applicable at Mr. Blais's death in 2018 provided:

> An action under this section must be commenced within 2 years after the decedent's death, except that if the decedent's death is caused by a

---

under 14 M.R.S. § 159-A(2).  Perhaps.  Section 159-A(2) contains an extensive list of "recreational or harvesting activities" but not target practice.  This statute uses the term, "means," which has the "clear import that this is its *only* meaning."  ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 226 (2012) (READING LAW).  However, it also uses the phrase, "including, but not limited to", which "is usually taken to mean that it may include other things as well."  *Id.*  As the Court resolves the fee-shifting question on other grounds, it will not offer an advisory ruling on whether target practice is included in the definition of "recreational or harvesting activities" under 14 M.R.S. § 159-A(2).

> homicide, the action may be commenced within 6 years of the date the personal representative of the decedent discovers that there is a just cause of action against the person who caused the homicide.

18-A M.R.S. § 2-804(b).  While ordinarily all claims against Mr. Mills would be time-barred, the Plaintiff argues that a six-year statute of limitations applies because the "Complaint pleads clearly the factual allegation that David Blais'[s] death was not a suicide, but instead, a homicide, which resulted from the negligent, intentional, and reckless actions of Mills."  *Pl.'s Opp'n Mem.*  at 10.

The Court agrees.  In Maine, "[h]omicide includes both murder—causing death intentionally or knowingly—and manslaughter — causing death of either recklessly or with criminal negligence."  *Reynolds v. Dipietro*, No. CV-18-566, 2022 Me. Super. LEXIS 23, at *2 (Me. Super. Ct. Jun. 30, 2022) (citing 17-A M.R.S. §§ 201(1)(A), 203(1)(A)).  The Maine Supreme Judicial Court determined that "'[c]riminal homicide' [was] not defined in the laws of Maine" and thus gave the terms its plain, ordinary meaning "as '[t]he act of purposely, knowingly, recklessly, or negligently causing the death of another human being.'"  *State v. Hastey*, 2018 ME 147, ¶ 25, n.14, 196 A.3d 432 (citing *Criminal Homicide*, BLACK'S LAW DICTIONARY (10th ed. 2014) (alternatively defining "criminal homicide" as "[h]omicide prohibited and punishable by law, such as murder or manslaughter")).  The Supreme Judicial Court continued, "[b]ecause manslaughter includes as an element '[r]ecklessly, or with criminal negligence, causes the death of another human being,' 17-A M.R.S. § 203 (2017), we reasonably infer that the Legislature intended to include manslaughter when it used the term 'criminal homicide.'"  *Id.*

Furthermore, the Maine Supreme Judicial Court said that "criminally

21

negligent manslaughter" exists "when one by his conduct causes the death of another and fails to be aware of the risk posed by that conduct." *State v. Harrington*, 440 A.2d 1078, 1079 (Me. 1982). "The failure to be aware of the risk, 'when viewed in the light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *Id.* (quoting 17-A M.R.S. § 10(4)(C).

Here, the complaint alleges that Mr. Mills negligently caused the death of Mr. Blais, *Compl.* ¶¶ 83, 85, and the Court views the pleadings as sufficient for death caused by negligence, and thus wrongful death by homicide. Handing over a loaded firearm to someone who is intoxicated, has been suffering some type of mental breakdown, is heavily medicated with psychotropic medicine, and who is unfamiliar with firearms seems like a textbook example of negligent manslaughter. *See Harrington*. 440 A.2d at 1079. In her complaint, Ms. Blais alleges Mr. Mills owed Mr. Blais a duty to prevent foreseeable harm by virtue of Mr. Mills' special relationship with him; Mr. Mills breached his duty by furnishing his gun to him while on psychiatric medications and alcohol, and by failing to administer aid; it was foreseeable that the combination of psychiatric medications, alcohol, and a gun in untrained hands would pose an extreme danger; and facilitating Mr. Blais's access to Mr. Mills's gun caused Mr. Blais harm. *Compl.* ¶¶ 46-47, 51-54, 56, 58-59, 62-64, 67.

Mr. Mills' actions appear far more egregious than the actions of Robert P. Harrington, for example, who had become intrigued by a shotgun hanging in a gun

22

rack on the living room wall in a friend's house, and, with his friend standing just a few feet away in the kitchen, removed the shotgun, began inspecting it, causing the shotgun to discharge, killing his friend. *Harrington*, 440 A.2d at 1078. In a brief opinion, the Maine Law Court readily affirmed Mr. Harrington's conviction for criminally negligent manslaughter. *Id.* at 1080.

Mr. Mills, on the other hand, argues that the homicide exception cannot apply because Mr. Mills has neither been charged with nor convicted of homicide. *Mills' Mot.* at 10-13. Mr. Mills points to "the legislative history of the statute" that he says "shows that it is intended for those situations in which there are actual charges brought against the defendant and a conviction." *Id.* at 11. Whether a court should consider legislative history in a situation like this one remains controversial. *See* READING LAW at 369-90. Here, the case against resorting to legislative history is persuasive because the statute itself is especially clear:

> [I]f the decedent's death is caused by a homicide, the action may be commenced within 6 years of the date the personal representative of the decedent discovers that there is a just cause of action against the person who caused the homicide.

18-A M.R.S. § 2-804(b). The statute allows for a six-year statute of limitations against "the person who caused the homicide," not the "person convicted of the homicide" and not even "the person charged with causing the homicide." The First Circuit has cautioned that "legislative history cannot introduce ambiguity into a clear statute." *Coughlin v. LAC Du Flambeau Band (In re Coughlin)*, 33 F.4th 600, 609 (1st Cir. 2022) (citing *Penobscot Nation v. Frey*, 3 F.4th 484, 491 (1st Cir. 2021) (citing *Calcieri v. Salazar*, 555 U.S. 379, 392 (2009)). "[C]ourts must presume that a legislature says

23

in a statute what it means and means in a statute what it says there." *Calcieri*, 555 U.S. at 392 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

The Court could stop here; however, because the Court does not know if the First Circuit will read § 2-804(b) the way this Court has, the Court will briefly address the legislative history argument. Discussing the legislative history, Mr. Mills concludes that then Governor LePage, who vetoed the bill, "assumed that the homicide exception to the statute of limitations would only be used against defendants actually convicted of homicide." *Id.* at 12 (citing Legis. Rec. H-1612-1613 (2d Reg. Sess. 2016) (in vetoing the bill, then Governor LePage asked "[d]oes anyone truly believe that the murderers in Maine's prison system have incredible assets to cover these damages?")).

Responding to then Governor LePage's concerns and encouraging his colleagues to override the executive veto, Representative Ward explained that without the amendment, grieving families only have "two years from the date of murder of their loved one to file a civil suit against the person guilty of the crime." Legis. Rec. H-1613 (2d Reg. Sess. 2016). Representative Ward clarified how the amendment would help:

> [T]he evidence in the case cannot be used in a civil suit until the case is resolved, including appeals and those appeals can take even more time. This bill seeks to solve that by allowing grieving families six years from the date of discovery to bring such a civil suit.

*Id.*

This legislative history confirms that two individuals involved in the legislative process, the Governor, who vetoed the bill, and one of the Representatives who

supported overriding the Governor's veto, had in their minds the situation where "the person who caused the homicide" was criminally charged.  However, the language of the statute does not preclude a civil action against a convicted individual, and the fact that two individuals mentioned one scenario does not preclude the statute's application to other situations.  Moreover, the wrongful death statute itself does not require a conviction before a person can be civilly sued for causing another's death.  In all, the Court does not consider the legislative history to explicate the plain meaning of the statute.

### 2.    Res Judicata Requires Dismissal of the Claims Against Dylon Mills

Despite qualifying for the six-year statute of limitations, the doctrine of res judicata requires dismissal of the lawsuit against Mr. Mills.  "The legal doctrine of res judicata concerns the preclusive effect of prior judgments on claims or issues raised in subsequent litigation." *Hagerman v. Johnson*, No. 2:16-cv-00093-JAW, 2017 U.S. Dist. LEXIS 8638, at *17 (D. Me. Jan. 23, 2017).  "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

"[R]es judicata . . . is a matter of substantive law," *Schell v. Ford Motor Co.*, 270 F.2d 384, 388 (1st Cir. 1959), and "a federal court sitting in diversity jurisdiction must borrow the substantive law of the forum state." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003).  The Court therefore turns to Maine law for the

25

substantive law of res judicata.

Under Maine law, "[c]laim preclusion bars relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been[,] litigated in the first action." *Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 22, 307 A.3d 1049 (quoting *Machias Sav. Bank v. Ramsdell*, 1997 ME 20, ¶ 11, 689 A.2d 595).

On the first element, the parties are the same litigators in the current action and in the second, Massachusetts-based action. *Compare Compl., with Second Compl.* In both lawsuits, Sally Blais, personal representative of the estate of David Blais, is the plaintiff and Dylon Mills, also known as Dylon Rappleyea, is one of the defendants. In fact, in both lawsuits, Mary Kenneth Tarr is also named as a defendant.[7]

On the second element, a valid final judgment was entered in the prior action. The Essex County Superior Court dismissed the case reasoning that "[b]ecause [Plaintiff] Blais'[s] wrongful death claims are barred by Maine's two-year statue, Mills' request for dismissal must be granted." *Second Dismissal* at 8. The Plaintiff, however, argues that choice of law is not a final judgment on the merits. *Pl.'s Opp'n Mem.* at 9. This assertion is incorrect. Dismissing a claim not brought within the statute of limitations—even if the applicable statute was selected using choice of law principles—is considered a final adjudication on the merits. "A decision on the merits

---

[7]    GSG was not named in the second complaint, filed in Massachusetts.

for res judicata purposes includes 'a dismissal for failure to come within an applicable statute of limitations.'" *Hebron Acad., Inc. v. Town of Hebron*, 2013 ME 15, ¶ 29, 60 A.3d 774 (quoting *Beegan v. Schmidt*, 451 A.2d 642 (Me. 1982)).  Thus, the wrongful death claim, and all derivative tort claims, have already reached a final valid judgment.

On the third element, the Court concludes that the matters presented for decision in the second action were, or might have been, litigated in the first action. The Plaintiff disagrees.  According to the Plaintiff, "[i]n the instant litigation, the Plaintiff's Complaint pleads clearly the factual allegations that David Blais'[s] death was not a suicide, but instead a homicide, which resulted from the negligent, intentional, and reckless actions of Mills" and thus "the claims are not the same as the claims for which the Massachusetts court dismissed the action based upon the 2 year statute of limitations argument." *Pl.'s Opp'n Mem.* at 10.[8]  In evaluating the third element, Maine courts "examine whether the same cause of action was before the court in the prior case." *Finch*, 2024 ME 2, ¶ 22 n.5, 307 A.3d 1049 (quoting *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 MR 94, ¶ 8, 81 A.3d 371).  Cause of action is defined "through a transactional test, which examines the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same nucleus of operative facts, and sought redress for essentially the same basic

---

[8]    Confusingly, in the Plaintiff's consolidated opposition to the Defendants' motions to dismiss, she writes "[t]here is support for claims against a defendant for their acts and omissions which lead to the death of the plaintiff via suicide." *Pl.'s Opp'n Mem.* at 10.

wrong." *Id.* The Law Court explained the purposes of claim preclusion:

> Claim preclusion is grounded on concerns for judicial economy and efficiency, the stability of final judgments, and fairness to litigants. The doctrine promotes those goals by preventing a party from splintering his or her claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action.

*20 Thames St. LLC v. Ocean State Job Lot of Me. 2017 LLC*, 2021 ME. 33, ¶ 15, 252 A.3d 516 (*Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, ¶ 19, 170 A.3d 230 (citation and quotation marks omitted).

The current litigation satisfies the transactional test. A side-by-side comparison between the facts alleged in the instant complaint and the facts alleged in the Massachusetts complaint reveals a striking similarity. *Compare Compl.* ¶¶ 1-45, *with Second Compl.* ¶¶ 1-27. In particular, the essential allegations of what happened at the GSG sandpit are the same, almost word for word. *Compare Compl.* ¶¶ 34, 39-45, *with Second Compl.* ¶¶ 20-23.

Presumably recognizing that she faced a significant legal hurdle in bringing a new Maine action in a case previously litigated to judgment in Massachusetts, Ms. Blais acknowledged that the case had been dismissed both in Massachusetts and Maine, but she stated that "there exist claims which were not pleaded in that Complaint against these two defendants, which necessitate the instant litigation." *Compl.* at 1. This time, Ms. Blais newly expressly alleges that Mr. Blais's death was a homicide. *Compare Compl.* ¶¶ 85, 87 ("The negligent and/or intentional actions of Tarr and Mills caused the homicide of David Blais," "The negligent and/or intentional actions of Tarr and Mills which led to the homicide of Blais were discovered in the

28

course of discovery by the plaintiff"), *with Second Compl.* ¶¶ 29, 31("Defendant Mills was negligent and breached his duty of care to Mr. Blais . . . when Defendant Mills organized a trip to a remote gravel pit . . . and negligently entrusted Mr. Blais to use Defendant Mills' firearm without proper training and without proper supervision. Defendant Mills knew Mr. Blais was under the influence of his psychiatric medications and excessive alcohol . . . [and] that Mr. Blais did not have proper experience to handle firearms safely," "Mr. Blais then died . . . as a result of Defendant's negligence").

As another example, the Plaintiff's complaint alleges Mr. Mills cleaned and stored his gun after Mr. Blais shot himself to conceal evidence—a fact that was also alleged in the second complaint, just absent the new allegation about an attempt to conceal evidence in a homicide. *Compare Compl.* ¶ 105 (Defendant "Mills cleaned the firearm, removed the bullets, and locked the firearm in [Defendant] Mills' vehicle, in an attempt to hide the evidence which led to [Mr.] Blais'[s] death"), *with Second Compl.* ¶ 22 ("Defendant Mills took possession of the weapon, emptied the remaining bullets, cleaned the firearm, and locked it up back in Mr. Mills' truck's glove compartment before the police arrived"). Therefore, the Court concludes that the matters presented for decision in the present complaint were already litigated before the Essex County Superior Court because the same cause of action—the same transaction or occurrence—was before the court in the prior case.

In short, there is no significant factual difference between Ms. Blais's current complaint and the Massachusetts complaint. Ms. Blais focuses on her new allegation,

which does not appear in the Massachusetts complaint, that Mr. Mills's actions constituted a homicide, not merely the result of Mr. Mills's negligence. But whether Mr. Mills's death was a homicide or the result of his negligence is just another way of saying the same thing. As the Court has noted earlier, negligence causing death is a form of homicide. Furthermore, whether the facts amount to a homicide is a lawyer's conclusion, not a fact, presumably driven by the need for Ms. Blais to fit within the six-year homicide exception to Maine's wrongful death statute of limitation.

Finally, Ms. Blais attempts to demonstrate why the purportedly new claim could not have been brought earlier by alleging that Ms. Tarr and Mr. Mills's actions "led to the homicide of [Mr.] Blais" and "were discovered in the course of discovery by the plaintiff." *Compl.* ¶ 87. However, Ms. Blais does not point to any new facts that led her to a new conclusion. Instead, Ms. Blais merely realleges the same facts alleged in the prior complaint but now concludes this was a wrongful death by homicide. That conclusory allegation is insufficient.

In short, the Court concludes that in filing this new lawsuit in Maine, Ms. Blais is attempting to do precisely what the law prevents her from doing. Relying on the same facts in the prior lawsuit, she has refashioned her legal theories, and then asserted the right to bring a new lawsuit based on the same facts in a different jurisdiction. She is "splintering . . . her claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action." *20 Thames St.*, 2021 ME. 33, ¶ 15. The law in favor of "judicial economy and efficiency,

30

the stability of final judgments, and fairness to litigants" precludes her new attempt to file a lawsuit on the same facts against the same parties when the first lawsuit failed. *Id.*

## VI.   CONCLUSION

The Court GRANTS in part and DENIES in part Defendant Gorham Sand & Gravel's Motion to Dismiss (ECF No. 9) and GRANTS Defendant Dylon Mills' Motion to Dismiss by Dylon Mills (ECF No. 15).   The Court DENIES Defendant Gorham Stand & Gravel's Motion to Dismiss only insofar as it seeks costs and fees.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of April, 2026